IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KELVIN A. CANADA,       ) | |
|    Plaintiff        ) | Civil Action No.: 7:11cv00569 |
|                                 ) | |
| v.        ) | |
|                                 ) | **REPORT AND RECOMMENDATION** |
| **WALTER DAVIS, et al.,**        ) | By: PAMELA MEADE SARGENT |
|    Defendants.        ) | United States Magistrate Judge |

Plaintiff, Kelvin A. Canada, an inmate formerly incarcerated at Red Onion States Prison, ("ROSP") in Pound, Virginia,[1] filed this action pro se for monetary damages, as well as declaratory and injunctive relief under 42 U.S.C. § 1983 against Virginia Department of Corrections, ("VDOC"), Officer Walter Davis, Sgt. William Wright, Sgt. Paul Payne, and Capt. Dewayne Turner. Canada also sues ROSP Head Nurse Vicki Phipps, Dr. Timothy McBride and Nurse Melanie Scott. Canada asserts claims based on the use of excessive force, a failure to protect and deliberate indifference to his medical needs. Jurisdiction over this matter is based upon 28 U.S.C. § 1331. The matter is before the undersigned on the Motion To Dismiss filed by defendants McBride, Phipps and Scott, (Docket Item No. 20), and the Motion For Summary Judgment filed by the defendants Davis, Wright, Payne, and Turner, (Docket Item No. 32). This case is before the undersigned magistrate judge on referral, pursuant to 28 U.S.C. § 636(b)(1)(B). The plaintiff has responded to the motions, and none of the parties have requested a hearing on the motions. Based upon the parties' briefs and the accompanying affidavits and

---

[1] Canada is currently housed at Sussex I State Prison in Waverly, Virginia.

exhibits, I recommend that the court grant the Motion to Dismiss and grant in part and deny in part the Motion for Summary Judgment.

## I. Facts

In his sworn Complaint, (Docket Item No. 1) ("Complaint"), Canada alleges that, on September 3, 2011, he was escorted to the B1, 2, 3 vestibule at ROSP to be placed in ambulatory restraints by defendants Wright, Payne, Turner and Davis. (Complaint at 6.) Canada alleges that, while he was in a kneeling position and fully restrained, Davis, Turner, Payne and Wright "jerked" his right arm forward to simulate a combative and assaultive scene. (Complaint at 6.) Canada alleges that Payne, Wright and Davis slammed him to the floor while Turner watched without intervening. (Complaint at 7.) Canada alleges that Davis gouged his left eye with his finger while falsely yelling for him to "stop trying to bite" him. (Complaint at 7-8.) Canada alleges that he was wearing a spit mask at the time, which would have made it impossible for him to bite Davis. (Complaint at 8.) Canada alleges that he was attacked for four to five minutes and, when the attack ceased, immediately requested medical assistance. (Complaint at 8.)

Canada stated that he was released from ambulatory restraints 34 hours later, which allowed more mobility and, in turn, allowed him to detect that he was having problems with his right shoulder and left ribs. (Complaint at 9.) Canada stated that he then filed an emergency grievance on September 4, 2011, requesting medical treatment for his pain. (Complaint at 9.) Canada alleges that Nurse Scott evaluated him and reported that nothing was wrong with his shoulder or ribs. (Complaint at 9, 12.) He stated that on September 5, 2011, he awoke in extreme

pain and again filed an emergency grievance, in which Nurse T. Cox saw a bone sticking out from his right shoulder and immediately sent him for x-rays. (Complaint at 9-10.) Canada alleges that the x-ray results were lost, and, therefore, his injuries were not determined. (Complaint at 10.) Canada states that he saw Dr. T. McBride on September 6, 2011, for his injuries, and Dr. McBride noted that Canada's "x-rays were reportedly normal." (Complaint at 10.) Canada stated that Dr. McBride determined that he had only a knot on his shoulder and ribs. (Complaint at 12.) Canada states that he filed an administrative complaint for malpractice for the treatment he received on September 6, 2011, and that Nurse Phipps responded to the complaint on September 12, 2011, by stating that there was nothing wrong with Canada's shoulder or ribs. (Complaint at 10.) Canada stated that on September 28, 2011, follow-up x-rays of his shoulder showed a shoulder separation. (Complaint at 11.) He stated that he did not receive x-rays of his ribs on that day. (Complaint at 11.)

The four correctional officer defendants have offered evidence by affidavits attached to their motion for summary judgment. By Affidavit dated June 8, 2012, Davis stated that on September 3, 2011, he was assisting Payne and Wright in restraining Canada in the shower after Canada had thrown feces on Officer R. Gibson. (Docket Item No. 33, Att. No. 1, "Davis Affidavit," at 1.) Davis stated that Canada was restrained and escorted to the vestibule to be placed in ambulatory restraints. (Davis Affidavit at 1.) Davis stated that while bringing Canada's right hand from behind his back to the front in order for handcuffs to be applied, Canada pulled his arm away from Davis because he had feces or some type of slick substance smeared on his arm. (Davis Affidavit at 1.) Canada then struck Wright in the face shield of his helmet. (Davis Affidavit at 1.) Davis stated that Canada was

-3-

Case 7:11-cv-00569-SGW-PMS   Document 45   Filed 09/24/12   Page 3 of 19   Pageid#: 520

immediately placed on the floor where he continued to be combative. (Davis Affidavit at 2.) Canada attempted to bite Davis's hand several times while Davis maintained control of Canada's head. (Davis Affidavit at 2.) Davis admitted to utilizing pressure points to maintain control of Canada's head and denied that he gouged Canada's eyes. (Davis Affidavit at 2.) Once Canada was restrained, he was taken to the medical department to be assessed. (Davis Affidavit at 2.)

By Affidavit dated June 8, 2012, Turner stated that on September 3, 2011, he was notified by staff that Canada had thrown feces at Officer R. Gibson. (Docket Item No. 33, Att. No. 2, "Turner Affidavit," at 1.) Turner stated that he immediately notified Assistant Warden Richard Rowlette of the incident, who then ordered that Canada be placed in ambulatory restraints. (Turner Affidavit at 1.) Turner stated that when he arrived at the B3 pod, Canada was in the shower, refusing to be restrained. (Turner Affidavit at 1.) After Canada declined several orders to back up to the door to be restrained, Turner authorized the use of OC spray, which was administered by Wright. (Turner Affidavit at 1.) Canada was restrained and removed from the shower without further incident and escorted to the B1 vestibule to be placed in ambulatory restraints. (Turner Affidavit at 1-2.) Turner stated that, as the officers removed Canada's hands from behind his back, he became combative. (Turner Affidavit at 2.) Turner stated that he did not witness Canada striking Wright. (Turner Affidavit at 2.) Turner stated that after a short struggle, Canada was restrained and taken to the medical department for evaluation. (Turner Affidavit at 2.)

By Affidavit dated June 7, 2012, Payne stated that on September 3, 2011, Officer J. Owens and Officer R. Gibson were escorting offenders to and from the showers in the B3 pod. (Docket Item No. 33, Att. No. 3, "Payne Affidavit," at 1.)

Owens and Gibson went to the shower to escort Canada back to his cell. (Payne Affidavit at 1.) As Gibson opened the tray slot on the shower door, Canada threw feces on him. (Payne Affidavit at 1.) Payne stated that he was notified of the incident by Owens. (Payne Affidavit at 1.) Payne stated that he entered the B3 pod and ordered staff to dress in personal protective gear. (Payne Affidavit at 1.) Owens began to video record the incident. (Payne Affidavit at 2.) Assistant Warden Richard Rowlette ordered that Canada be placed in ambulatory restraints. (Payne Affidavit at 2.) Payne stated that he and Wright utilized the rolling shield to create a barrier so that staff could move to the shower without having feces thrown on them. (Payne Affidavit at 2.) Payne stated that he ordered Canada to back up to the cell door to be restrained, but Canada refused and moved to the back of the shower. (Payne Affidavit at 2.) Payne stated that Wright then administered a one-half-to-one second burst of OC pepper spray in the shower area striking Canada in the back and head area. (Payne Affidavit at 2.) Canada then moved to the shower door and placed his hand out of the tray slot to be restrained. (Payne Affidavit at 2.) Payne stated that he and Davis restrained Canada and escorted him to the B1 vestibule where he refused to be decontaminated. (Payne Affidavit at 2.) Payne stated that he, Wright and Davis strip searched Canada and began to place him in ambulatory restraints. (Payne Affidavit at 2.) Wright placed leg restraints on Canada without incident. (Payne Affidavit at 2.) Payne stated that Wright released Canada's hands in order to move them from the back to the front to be restrained. (Payne Affidavit at 2.) Payne was able to move Canada's left hand to the front without incident. (Payne Affidavit at 2.) Davis moved Canada's right hand to the front, and Canada pulled away and made a swing toward Wright's helmet. (Payne Affidavit at 2.) Canada was immediately taken to the floor in order to regain control, and wrist locks were utilized. (Payne Affidavit at 2.) Canada attempted to

bite Davis, who in turn, utilized pressure points to maintain control of Canada's head. (Payne Affidavit at 2.) Canada was placed in ambulatory restraints and escorted to the medical department to be assessed. (Payne Affidavit at 2.)

By Affidavit dated June 13, 2012, Wright[2] stated that on September 3, 2011, he was called to the B3 pod shower area to assist in placing Canada in ambulatory restraints after he threw feces on Officer R. Gibson. (Docket Item No. 33, Att. No. 4, "Wright Affidavit," at 1.) Wright stated that Turner gave Canada several orders to be restrained and removed from the shower, and Canada refused. (Wright Affidavit at 1.) After authorization was given to use OC spray, Wright stated that he deployed a one-half-to-one second burst of the OC spray in the shower area. (Wright Affidavit at 1.) Canada subsequently submitted to hand restraints and was removed from the shower without further incident. (Wright Affidavit at 1.) Wright stated that Canada was escorted to the B1 vestibule and was placed in ambulatory restraints. (Wright Affidavit at 1-2.) Wright stated that during the restraining process, Canada's hands were uncuffed from behind to be restrained in the front. (Wright Affidavit at 2.) While uncuffed, Canada punched Wright in the face-shield, and Canada was immediately placed on the floor in order for staff to regain control of him. (Wright Affidavit at 2.) Canada was restrained and then escorted to the medical department for assessment. (Wright Affidavit at 2.)

---

[2] At the time of the incident, Wright was employed as a Sergeant at ROSP. (William Wright Affidavit at 1.) Wright is no longer employed at ROSP. (William Wright Affidavit at 1.)

Canada has filed an affidavit in response to the Motion for Summary Judgment, (Docket Item No. 44) ("Canada Affidavit II").[3] In this affidavit, Canada refutes Davis's statement that once Canada's right hand was released from restraints that Canada pulled away from him and punched Wright in the face shield. (Canada Affidavit II at 2-3.) Canada states that the video recording of the alleged September 3, 2011, attack proves that he never pulled away from Davis. (Canada Affidavit II at 3.) Canada also contends that the video recording shows that he never punched or attempted to punch anyone. (Canada Affidavit II at 3.) He states that the video recording shows that he was wearing a spit mask during the entire alleged assault, therefore, making it impossible to bite Davis. (Canada Affidavit II at 3-4.) Canada further contends that the video recording shows that Turner was visibly present during the alleged assault and is the person speaking on the video. (Canada Affidavit II at 4-5.) Canada states that as a result of the alleged September 3, 2011, attack, he has had reconstructive surgery to repair a shoulder separation. (Canada Affidavit II at 11.) Canada asserts that Davis and Wright have a history of assaulting prisoners, wherein Davis jerks the prisoner's arm forward to simulate an assault initiated by the prisoner, therefore, justifying retaliatory excessive force. (Canada Affidavit II at 7.)

The correctional officer defendants also have filed a copy of the video recording that they assert is of the incident at issue. (Docket Item No. 36.) The video recording does show that something occurred as the officers were attempting to move Canada's right arm from behind his body to the front of his body to be

---

[3] Canada also filed a "Counter-Affidavit" in response to the Motion to Dismiss, (Docket Item No. 28) ("Canada Affidavit I"). Since this document was not sworn, the court will consider it as argument rather than a tender of evidence to refute the Motion to Dismiss.

-7-

placed in ambulatory restraints. From the angle of the video recording, the court cannot determine whether Canada tried to pull his arm away or, as, Canada claims, Davis jerked his arm forward. Because the video is being recorded behind Canada, and Wright is in front of Canada, the video does not reveal whether Canada punched or attempted to punch Wright in the face shield. The officers quickly forced Canada from his kneeling position to the floor. After forcing Canada to the floor, the officers' bodies obstruct any view of Canada or their arms and hands for several minutes. During this time, the officers can be heard repeatedly instructing Canada to stop resisting and to stop trying to bite the officers. After the incident, Canada appears to be bleeding on the right side of his head. The video also shows that, after the incident, Canada's left eye is visibly swollen.

The video evidence shows that the officers who placed Canada in restraints placed him in a wheelchair and took him to the medical department where two females, who appear to be nurses, examined Canada. They cleaned and placed what they said was antibiotic ointment on wounds on the right side of his head and over his left eye. One of the nurses informed Canada that she would place him on the list to be seen by a doctor and would request an x-ray. Canada requested something for pain, and one of the nurses said she would give him Motrin. The nurses then allowed the correctional officers to return Canada to his cell.

## II. Analysis

A.  *Motion to Dismiss*

The healthcare defendants, Dr. McBride and Nurses Phipps and Scott argue that Canada's claims against them should be dismissed as failing to state a claim

upon which relief may be granted pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). In particular, they assert that an inmate cannot prevail on a § 1983 claim based on medical malpractice.

In considering a motion to dismiss, all well-pleaded factual allegations contained in a complaint are to be taken as true and viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nevertheless, the complaint must contain "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action," and must allege facts specific enough to raise a right to relief above the speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment on convicted prisoners. *See* U.S. CONST. amend. VIII. To demonstrate cruel and unusual punishment, a plaintiff must establish that the defendants acted with "deliberate indifference" and he experienced an extreme deprivation of a basic human need or "serious or significant" pain or injury. *Wilson v. Seiter*, 501 U.S. 294, 299-303 (1991). In order to state a claim for violation of the Eighth Amendment right to be free from cruel and unusual punishment based on medical care, an inmate must show deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. *See Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'").

In his Complaint, Canada does not allege that he was denied medical care. Instead, he alleges that the care provided was inadequate to properly diagnose and treat his condition. Mere negligence in rendering medical care to a prisoner, however, does not rise to the level of a claim cognizable under § 1983. *See Goode v. Hartman*, 388 F. Supp. 541, 542 (E.D. Va. 1975); *Bishop v. Cox*, 320 F. Supp. 1031, 1032 (W.D. Va. 1970). "'Allegations of improper or insufficient medical treatment do not state a Constitutional claim.'" *Bishop*, 320 F. Supp. at 1032 (quoting *Hopkins v. County of Cook*, 305 F. Supp. 1011, 1012 (N.D. Ill. 1969)). In order to establish a constitutional deprivation cognizable pursuant to § 1983 the treatment complained of must suggest "conduct that shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952).

For these reasons, I will recommend that the court grant the medical providers' motion to dismiss and dismiss Canada's claims against them.

### B. *Motion for Summary Judgment*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Thus, the court will view the facts and inferences in the light most favorable to Canada on the defendants' motion for summary judgment. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

Canada alleges that correctional officers Wright, Payne and Davis used excessive force against him and that Turner allowed the assault to occur in violation of the Eighth Amendment's prohibition against the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This amendment not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The unnecessary and wanton infliction of pain by a prison official through the use of excessive force upon an inmate has been clearly established as a violation of the Eighth Amendment's prohibition on cruel and unusual punishment

-11-

for a number of years. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment also requires prison officials to take reasonable measures to guarantee the safety of inmates. *See Farmer*, 511 U.S. at 832; *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984).

The determination of whether the use of force by a prison official violates the Eighth Amendment includes both a subjective and objective component. *See Williams*, 77 F.3d at 761 (citing *Wilson*, 501 U.S. at 302). Not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. *See Hudson*, 503 U.S. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). To meet the objective component in an excessive force case, an inmate must show that the force used was "nontrivial." *Wilkins v. Gaddy,* 130 S. Ct. 1175, 1179 (2010), given that "contemporary standards of decency always are violated … whether or not significant injury is evident." *Hudson,* 503 U.S. at 9. "This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." *Wilkins,* 130 S. Ct. at 1178. In fact, the extent of the injury may suggest that "'the use of force could plausibly have been thought necessary' in a particular situation" or "provide some indication of the amount of force applied." *Wilkins,* 130 S. Ct. at 1178 (quoting *Hudson,* 503 U.S. at 7.) For example, "[a]n inmate who complains of a [mere] 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins,* 130 S. Ct. at 1178 (quoting *Hudson*, 503 U.S. at 9.) As *Wilkins* clarified, it is the nature of the force "that ultimately counts" and provides the "core judicial inquiry" in an excessive force case. 130 S. Ct. at 1178. In particular, courts must consider "whether [the

force] was nontrivial and 'was applied maliciously and sadistically to cause harm.'" *Wilkins,* 130 S. Ct. at 1178 (quoting *Hudson*, 503 U.S. at 7.)[4]

To meet the subjective component in an excessive force case, the inmate must show that the prison official applied force "maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-21. The inquiry under the subjective standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. The Supreme Court in *Whitley* set out several factors which should be considered in determining whether prison officials acted maliciously and sadistically. In particular, the court should consider:

1) the need for application of force;
2) the relationship between that need and the amount of force used;
3) the threat "reasonably perceived by the responsible officials;" and
4) "any efforts made to temper the severity of a forceful response."

*Williams*, 77 F.3d at 762 (citing *Whitley*, 475 U.S. at 321).

Regarding Canada's excessive force and failure to protect claims, the evidence before the court presents a dispute in material fact that prevents the entry of summary judgment in the defendants' behalf. In fact, if the evidence is viewed in the light most favorable to Canada, Canada was slammed to the floor by the

---

[4] *Wilkins* abrogated the Fourth Circuit's decision in *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc), which held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." The *Wilkins* Court held that "[t]he Fourth Circuit's strained reading of [*Hudson v. McMillian* was] not defensible and that *Hudson* "did not, as the Fourth Circuit would have it, merely serve to lower the injury threshold for excessive force claims from 'significant' to 'non-de minimis' – whatever those ill-defined terms might mean." 130 S. Ct. at 1179.

-13-

correctional officers without provocation causing a shoulder separation that required surgical repair. Thus, a reasonable jury could find that this force caused more than de minimis injury and was not applied in a good faith effort to maintain or restore discipline but rather maliciously and sadistically for the purpose of causing harm. *See e.g. Wilkins*, 130 S. Ct. 1175; *Wilson*, 501 U.S. 294. Furthermore, based on Canada's evidence, Turner simply stood by and allowed this unprovoked attack to occur.

Insofar as the Complaint may be construed to allege a claim of deliberate indifference to Canada's medical needs against the correctional officer defendants, I find that there is no genuine dispute of material fact, and, therefore, that summary judgment should be issued. In each of their affidavits, the correctional officer defendants state that Canada was taken to the medical department to be assessed after being placed in ambulatory restraints. In his sworn Complaint, Canada also admits that he was seen by medical staff immediately after the altercation. (*See* Complaint at 8, "plaintiff was given sub-standard medical treatment & was immediately sent back to cell # B308….") Furthermore, the video evidence shows that the correctional officers took Canada to the medical department where he was assessed and treated by the nursing staff.

As stated above, to amount to deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. *See Farmer*, 511 U.S. at 837. Furthermore, to bring a medical treatment claim against nonmedical personnel, an inmate must show that such officers were personally involved in a denial of treatment, deliberately interfered with prison doctors'

-14-

treatment or tacitly authorized or were indifferent to the prison physicians' misconduct. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990) (overruled on other grounds). There are no facts before the court to suggest this.

The correctional officer defendants also argue that they are entitled to qualified immunity on Canada's claims. Qualified immunity "shields government officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Short v. Smoot*, 436 F.3d 422, 426 (4th Cir. 2006) ("Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"). Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

A claim of qualified immunity is evaluated using a three-step analysis. First, the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[5] Second, the court must "inquire whether at the time of the alleged violation [the right] was clearly established." *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips J., concurring). Third, the court must determine whether a "reasonable person in the official's

---

[5] In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that the sequential inquiry of *Saucier* is often appropriate, but not mandatory. Instead, the Court held that the judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *See Pearson*, 555 U.S. at 236.

-15-

position would have known that his conduct would violate that right." *Collinson*, 895 F.2d at 998 (Phillips J., concurring).

For the reasons already stated above, I find that there is a genuine issue of material fact as to whether Davis, Wright and Payne attacked Canada without provocation and Turner stood by and took no action to protect Canada. If so, each of them should have known that their actions violated Canada's right to be free from cruel and unusual punishment. Therefore, I find summary judgment based on qualified immunity inappropriate at this time.

I further recommend that summary judgment be entered in the defendants' favor on Canada's request for injunctive relief. Canada has requested the entry of a permanent injunction transferring him to Augusta Correctional Center. "The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). To be entitled to permanent injunctive relief, a plaintiff must demonstrate: (1) that he has suffered irreparable injury; (2) that remedies available at law, such a monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the parties, the remedy is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982).

The defendants correctly argue that Canada has presented no evidence to support a claim for injunctive relief. Furthermore, the undisputed evidence currently before the court is that Canada is no longer housed at ROSP. Also

-16-

Case 7:11-cv-00569-SGW-PMS   Document 45   Filed 09/24/12   Page 16 of 19   Pageid#: 533

Canada has provided the court with no evidence showing that the defendants sued could provide the relief requested.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Canada's Complaint fails to state a claim upon which relief can be granted against defendants Dr. McBride and Nurses Phipps and Scott;
2. There is a genuine dispute of material fact which prevents the entry of summary judgment in the correctional officer defendants' favor on Canada's excessive force and failure to protect claims;
3. There is no genuine dispute of material fact on Canada's claim of deliberate indifference to his medical needs, and the correctional officer defendants are entitled to summary judgment in their favor on these claims;
4. There is a genuine dispute of material fact which prevents the entry of summary judgment in the correctional officer defendants' favor based on their claim of qualified immunity; and
5. There is no genuine dispute of material fact on Canada's claim for injunctive relief, and the correctional officer defendants are entitled to summary judgment in their favor on this claim.

# RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the motion to dismiss and dismiss Canada's claims against Dr. McBride and Nurses Phipps and Scott. I further recommend that the court deny the motion for summary judgment filed on behalf of defendants Davis, Wright, Payne and Turner as to Canada's claims based on use of excessive force and failure to protect. I also recommend that the motion for summary judgment be granted as to Canada's claim of deliberate indifference to medical needs against defendants Davis, Wright, Payne and Turner and his request for injunctive relief.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Samuel G. Wilson, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 24th day of September, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE